926 So.2d 1139 (2006)
STATE of Florida, Petitioner,
v.
Anthony FRIERSON, Respondent.
No. SC03-1528.
Supreme Court of Florida.
February 9, 2006.
Rehearing Denied March 31, 2006.
*1140 Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Celia Terenzio, Bureau Chief and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, FL, for Petitioner.
Carey Haughwout, Public Defender, Marcy K. Allen, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL, for Respondent.
WELLS, J.
We have for review the decision in Frierson v. State, 851 So.2d 293 (Fla. 4th DCA 2003), which certified conflict with the decision in State v. Foust, 262 So.2d 686 (Fla. 3d DCA 1972). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

CONFLICT ISSUES
In Foust, the Third District Court of Appeal reversed a trial court's decision to suppress certain evidence that was found after an arrest, holding in relevant part that "the reasonableness of the search after arrest was not affected by the fact that the original stopping of [the defendant] may have been without probable cause." 262 So.2d at 688. In the present case, the Fourth District Court of Appeal recognized that the basis for the holding in Foust was that the warrant was an intervening circumstance which rendered the subsequent search sufficiently attenuated from the illegality of the initial stop. However, the court reached a contrary conclusion, holding that an arrest warrant "does not validate an illegal detention." Frierson, 851 So.2d at 300 (quoting Rollins v. State, 578 So.2d 850, 851 (Fla. 2d DCA 1991)); see also Solino v. State, 763 So.2d 1249 (Fla. 4th DCA 2000); Kimbrough v. State, 539 So.2d 619 (Fla. 4th DCA 1989). The Fourth District stated the conflict issue to be:
Where there is no reasonable cause to justify a traffic stop, may an outstanding arrest warrant constitute an intervening circumstance that dissipates the taint of the illegal action, so that evidence uncovered during a search incident to arrest is admissible in evidence?
Frierson, 851 So.2d at 294.

FACTS AND PROCEEDINGS BELOW
The Fourth District set forth the following findings of fact by the trial judge:
[O]n July 8, 2001, the defendant was driving an automobile at the intersection of Old Dixie Highway and Northlake Boulevard in Lake Park, Florida. The vehicle in which the defendant was riding was stopped at a traffic light facing north on Old Dixie Highway. Officer Steven Miller was stopped behind the defendant's vehicle. Upon the traffic light turning green, the defendant made a left hand turn onto Northlake Boulevard. Officer Miller testified that the *1141 defendant did not use a left turn signal prior to or during the left hand turn. Officer Miller also testified that neither he nor the drivers of other vehicles were affected by the defendant's failure to use a turn signal while making that turn. The officer's testimony also indicated that he observed a white light emanating from a crack in the plastic lens covering the tail light of the left rear of the defendant's vehicle. Officer Miller acknowledged that the plastic lens was cracked, but that the light was operating.
Because the defendant failed to use a turn signal in making his left hand turn and because white light was emanating from a crack in the plastic lens covering the taillight, Officer Miller effected a traffic stop of the defendant's vehicle. Upon being stopped by Officer Miller, the defendant provided the officer with identification. Officer Miller ran a check on the defendant, and learned that there was an outstanding warrant for the defendant's arrest for failure to appear in another proceeding. As a result of the outstanding warrant, the defendant was arrested. A search incident to the defendant's arrest revealed the firearm which formed the basis of the charge against him in this case. A subsequent investigation determined that the warrant which provided the basis for the defendant's arrest was issued due to another person's failure to appear. Someone other than the defendant was issued a notice to appear in the other case and wrongfully gave the issuing officer the defendant's name and date of birth. A fingerprint was taken of the individual to whom the notice to appear was issued. It is undisputed the print taken did not match that of the defendant's.
Id. at 294-95.
Respondent was charged in this case with possession of a firearm by a convicted felon. He sought to suppress the seizure of the firearm, contending that the traffic stop which preceded the arrest was unlawful and that the warrant which provided the basis for his arrest was wrongfully issued. The trial judge agreed with respondent that the traffic stop was unlawful based upon this Court's decisions in State v. Riley, 638 So.2d 507 (Fla.1994) (failure to use turn signal without driver's conduct creating reasonable safety concern does not constitute violation of statute), and Doctor v. State, 596 So.2d 442 (Fla.1992) (cracked taillight was not violation of law).
However, in the instant case, the trial court denied the motion to suppress the firearm. Relying upon Arizona v. Evans, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), and United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the trial court held that the law enforcement officer justifiably relied upon the arrest warrant, although it was later determined that the arrest warrant had been erroneously issued. The trial court next held that the fact that the respondent was illegally stopped by the arresting officer did not require suppression of the firearm because the firearm was found in a search which was incident to the arrest based upon the outstanding warrant and was sufficiently attenuated from the illegal stop. The trial court rested this portion of its holding upon United States v. Green, 111 F.3d 515 (7th Cir.1997); Wigfall v. State, 323 So.2d 587 (Fla. 3d DCA 1975); State v. Foust, 262 So.2d 686 (Fla. 3d DCA 1972); and Ruffin v. State, 201 Ga.App. 792, 412 S.E.2d 850 (1991). Respondent pled nolo contendere to the felony firearm possession offense, reserving the right to appeal the trial court's order on the motion to suppress.
Respondent appealed to the Fourth District Court of Appeal. The district court *1142 agreed with the trial court that the traffic stop was without a legal basis and that the law enforcement officer, in arresting Frierson, justifiably relied on the outstanding but invalid warrant. However, based on its prior precedent, the district court concluded that because the traffic stop was without reasonable cause, the firearm seized in the search of respondent incident to the arrest on the outstanding warrant was subject to suppression as fruit of the poisonous tree, notwithstanding the outstanding warrant. As earlier stated, the district court acknowledged conflict on this last issue and stated the conflict issue.

ANALYSIS
The State contends that the district court erred in respect to whether there was a lawful basis for the traffic stop. Respondent contends that the district court erred in determining that there was a lawful arrest based upon reliance on an invalid arrest warrant. We decline to review these issues and limit our review to the issue upon which the district court has certified conflict.

Decision on Jurisdiction
Although we clearly have jurisdiction based upon the Fourth District's certification, see art. V, § 3(b)(4), Fla. Const., we also have the discretion to determine that we should not exercise our jurisdiction in this case. Respondent initially asserts that we should exercise our discretion and discharge jurisdiction because Foust does not conflict expressly and directly with this case. Specifically, respondent maintains that the traffic stop of respondent in this case only required "founded suspicion," which is a different issue than that in Foust. See Foust, 262 So.2d at 688 ("[T]he reasonableness of the search after arrest was not affected by the fact that the original stopping . . . may have been without probable cause."). Thus, according to respondent, Foust should be read simply as rejecting the requirement of probable cause, as opposed to founded suspicion, which was the apparent standard for the stop in the Foust case. We agree with respondent that a stop for the violation of motor vehicle laws is similar to the investigative detention in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and may be made when there is founded suspicion. However, respondent gives Foust too narrow a reading. We read Foust to mean that the search incident to the outstanding warrant was sufficiently attenuated from the illegality of the original stop so as not to be sufficiently tainted by it to be the fruit of the poisonous tree, regardless of whether the standard for the original stop was probable cause or founded suspicion.
We likewise do not agree with respondent's assertion that even if the Foust decision conflicted with the Fourth District's decision in this case, the Third District's later case of Rozier v. State, 368 So.2d 379 (Fla. 3d DCA 1979), changed the law in the Third District from Foust. See Rozier, 368 So.2d at 380 ("[T]he motion to suppress should have been granted because the police officers' initial stop of the defendant, which resulted in the arrest, was based on no more than a `bare suspicion of illegal activity' rather than the `founded' or `reasonable' suspicion constitutionally required to support it."). First, Rozier was a decision by another panel of the Third District which does not mention Foust and therefore could not and did not recede from Foust. Additionally, not only does the Fourth District certify that there is a present conflict with Foust, we note that the Second District in Mays v. State, 887 So.2d 402, 404 n. 3 (Fla. 2d DCA 2004), held that there is a present conflict on the issue.

*1143 Resolution of Conflict
We conclude that we should resolve the conflict. We frame the conflict issue to be:
Whether evidence seized in a search incident to an arrest based upon an outstanding arrest warrant should be suppressed because of the illegality of the stop which led to the discovery of the outstanding arrest warrant.
In a specially concurring opinion in the present case, Judge Gross set forth an in-depth analysis of the issue. Judge Gross concurred in the majority opinion because of the Fourth District's precedent but wrote: "[W]ere we writing on a clean slate, I would affirm the ruling of the trial court that `the existence of a valid outstanding warrant discovered in the course of an illegal traffic stop' sufficiently attenuated the connection between the illegal stop and the search incident to the arrest so as to render the firearm found during the search admissible in evidence." Frierson, 851 So.2d at 300-01 (Gross, J., concurring specially). The analysis by Judge Gross stated that while the proper decision on the conflict issue was rooted in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the structure for the proper application of Wong Sun is found in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and that a proper application of Wong Sun using the Brown analysis structure is in United States v. Green, 111 F.3d 515 (7th Cir.1997). We agree with Judge Gross.
Wong Sun is, of course, the seminal case from the Supreme Court in respect to the issue of whether statements and other evidence obtained after an illegal arrest or search should be excluded. The Court in Wong Sun ruled that a defendant's statement and contraband taken from another defendant were the fruits of a law enforcement officer's illegal action and should have been excluded. The Court, however, declined to adopt a "but for" or "per se" rule, holding:
We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).
Wong Sun, 371 U.S. at 487-88, 83 S.Ct. 407 (emphasis added). It is this question which must be answered in this case to resolve the conflict issue.
To properly undertake the inquiry mandated by Wong Sun, we must consider three factors: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." Green, 111 F.3d at 521 (relying on the factors explicitly set forth in Brown, 422 U.S. at 603-04, 95 S.Ct. 2254).
In Green, police officers stopped a vehicle without legal justification and, during the stop, discovered that there was an outstanding warrant for the passenger, Avery Green. 111 F.3d at 517. After they arrested Avery, the officers obtained permission from the driver, David Green, to search the car, whereby they found drugs and a gun, which in turn led to criminal charges against David Green. The trial court denied David Green's motion to suppress, and after he was convicted, he appealed this ruling. The Seventh Circuit accepted, as we do in the present case, that the initial stop was not justified. Id. at 520. To determine whether the causal *1144 chain of events was sufficiently attenuated to dissipate the taint of the illegal stop, the court then applied the above three factors. First, the Green court found that only about five minutes had elapsed between the illegal stop of the Greens and the search of the car. Id. at 521. Thus, the court held that the first of the Brown factors weighed against finding the search attenuated but that this factor was not dispositive.
The court next considered the presence of intervening circumstances, which, as in the present case, included an outstanding arrest warrant.
The intervening circumstances of this case, because they are not outweighed by flagrant official misconduct, dissipate any taint caused by the illegal stop of the Greens. Specifically, after stopping the Green brothers, the officers discovered there was a warrant for Avery [Green]. Accordingly, the officers arrested Avery. With the right to arrest Avery came the right to conduct a search incident to an arrest. . . .
. . . Because the arrest is lawful, a search incident to the arrest is also lawful. The lawful arrest of Avery constituted an intervening circumstance sufficient to dissipate any taint caused by the illegal automobile stop.
Green, 111 F.3d at 521.
As stated, the Green court weighed the third factor, "the purpose and flagrancy of the official misconduct," against the intervening circumstance. The court found that while the stop of the Green vehicle did not meet constitutional standards, there was no bad faith on the part of the police, and the police action was not flagrant. The court found important that the police did not "exploit the stop in order to search the automobile. Rather the search came only after they learned that Avery was wanted on a warrant and arrested him." Id. at 523.
Applying the Brown factors in the present case, we reach the same result that the court reached in Green. The brief amount of time that elapsed between the illegal stop and the arrest of respondent weighs against finding the search attenuated, but this factor is not dispositive. In turning to the next factor, the outstanding arrest warrant was an intervening circumstance that weighs in favor of the firearm found in a search incident to the outstanding arrest warrant being sufficiently distinguishable from the illegal stop to be purged of the "primary taint" of the illegal stop. Crucially, the search was incident to the outstanding warrant and not incident to the illegal stop. The outstanding arrest warrant was a judicial order directing the arrest of respondent whenever the respondent was located. As Judge Gross noted, "A warrant indicates the existence of criminal conduct separate from the conduct that occurred at the time of the illegal traffic stop." Frierson, 851 So.2d at 302 (Gross, J., concurring specially). The illegality of the stop does not affect the continuing required enforcement of the court's order that respondent be arrested.
We believe to be very significant the third factor in the Brown analysis, which is whether the purpose and flagrancy of the official misconduct in making the illegal stop outweighs the intervening cause of the outstanding arrest warrant so that the taint of the illegal stop is so onerous that any evidence discovered following the stop must be suppressed. In this case, we do not find that the purpose and flagrancy of misconduct in illegally stopping respondent was such that the taint of the illegal stop required that the evidence seized incident to the outstanding arrest warrant should be suppressed. The law enforcement officer made a mistake in respect to the enforcement *1145 of the traffic law, but there was no evidence that the stop was pretextual or in bad faith.
Our decision is further supported by numerous other state supreme court decisions which have reached similar holdings in similar circumstances. For example, in State v. Hill, 725 So.2d 1282 (La.1998), after an arguably unjustified stop, a computer search returned reliable information that the defendant was wanted on an outstanding arrest warrant. In a search incident to the arrest, the officers discovered on the defendant a crack pipe that tested positive for cocaine residue. The court concluded that "the discovery of the existence of outstanding arrest warrants gives an officer probable cause to arrest, and may constitute an intervening circumstance within the meaning of Brown, which may dissipate the taint caused by prior police misconduct." Id. at 1286. The Kansas Supreme Court reached a similar result in State v. Jones, 270 Kan. 526, 17 P.3d 359, 361 (2001) (relying on Green and holding that in light of the fact that there was no evidence of bad faith on the part of the officer, once the officer "learned of the outstanding warrant, he had a right and duty to arrest Jones. Subsequent to the arrest, [the officer] had the right to search Jones"). See also State v. Page, 140 Idaho 841, 103 P.3d 454, 455 (2004) (adopting Green and holding that based on facts presented, the "discovery of an outstanding warrant for Page's arrest constituted an intervening event, dissipating any possible taint of unlawful law enforcement conduct").
Respondent contends that our decisions in Moody v. State, 842 So.2d 754 (Fla. 2003), and State v. Diaz, 850 So.2d 435 (Fla.2003), should control this decision. We do not agree. In neither case were we dealing with the suppression of evidence seized in a search incident to an outstanding arrest warrant.

CONCLUSION
We resolve the conflict among the district courts by holding that whether evidence seized in a search incident to an arrest based upon an outstanding warrant discovered following an illegal stop is to be suppressed is to be answered by analyzing the three factors set forth in Brown for application of the rule of Wong Sun.
We therefore quash the decision of the Fourth District in this case and direct that the conviction and sentence of the trial court be reinstated.
It is so ordered.
LEWIS, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., concurs in result only with an opinion.
PARIENTE, C.J., dissents with an opinion.
QUINCE, J., dissents with an opinion.
ANSTEAD, J., concurring in result only.
While I concur with the majority's decision in this case, I agree with many of the Chief Justice's concerns, including her observation that the analysis in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), was wholly concerned with the evaluation of the voluntariness of a confession given after an illegal arrest. However, since the United States Supreme Court has recognized in Brown that even evidence secured after an illegal arrest may not always be subject to suppression, I cannot join in the Chief's dissent.
Ultimately, any analysis to determine whether the evidence seized after an illegal detention should be suppressed must involve a balancing of the mutual concerns of *1146 discouraging police conduct that results in the illegal detention of a citizen, while recognizing the legitimate interest of the state in enforcing outstanding arrest warrants. While I believe that the majority has struck the right balance under the circumstances of this case, I write separately to caution that our ruling does not constitute the adoption of a per se rule that all searches based upon the discovery of a warrant after an illegal detention will be approved. Indeed, had the present case involved the illegal detention of a pedestrian or the exploitation of an illegal detention by searching a vehicle rather than the person arrested, there may very well have been a different outcome resulting from a balancing of the competing concerns set out above.

Brown and Wong Sun

In Brown the United States Supreme Court made it clear that not all evidence discovered after an illegal arrest must be suppressed. Logically, then, not all evidence discovered after an illegal detention must be suppressed. The question then is how courts should make that determination. For example, the analysis in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), provides a simple framework to make that determination. The relevant language of Wong Sun instructs that the question is whether "granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. at 488 (quoting John MacArthur Maguire, Evidence of Guilt 221(1959)).
As noted above, there are two competing values at play when an officer stops an individual illegally but then discovers an outstanding warrant: first, we do not want to reward law enforcement for engaging in illegal detentions; second, we must recognize the right of the state to arrest and search a wanted individual pursuant to that warrant. These are the concerns that must be balanced and that should govern the admissibility of any subsequently discovered evidence. Hence, Wong Sun's focus on whether an officer exploited the illegality of an initial stop when later discovering evidence seems to consider both of the competing values involved in analyzing the warrant situation. The existence of an arrest warrant may usually be determined by an objective evaluation distinguishable from the circumstances of the illegal detention; and, of course, we recognize that police officers are obligated to execute an arrest warrant upon its discovery. Finally, if a court determines that the police conduct in the first instance was not sufficiently egregious to mandate suppression, and the police did not exploit the illegality of the original stop, the subsequently discovered evidence may be admissible.
On the specific facts in the instant case, involving a suspect stop in which the officer was arguably misinformed on the state of the law regarding a failure to signal and a cracked tail light, it would not appear that an anticipated discovery of a warrant was part of the original cause for stopping Frierson. In other words there appears to have been a colorable, but ultimately legally insufficient, basis for the stop. While the concerns about pretextual stops are ever present, and courts must be vigilant in recognizing that police officers could abuse their authority and stop individuals without cause just to check for outstanding warrants, it appears unlikely that this occurred in the instant case. However, should a law enforcement officer be found to have made an illegal stop just to check for warrants, such conduct would clearly be sufficiently egregious and any search *1147 would constitute "exploitation of initial illegality" in violation of Wong Sun. In such a situation a balancing test would favor suppressing the fruits of any search, although an arrest pursuant to the warrant would be allowed.
In fact, even after employing a Brown analysis, courts in Illinois and Indiana have upheld the suppression of evidence seized pursuant to an illegal detention even though warrants were subsequently discovered. In People v. Mitchell, 355 Ill. App.3d 1030, 291 Ill.Dec. 786, 824 N.E.2d 642 (2005), appeal denied, 215 Ill.2d 611, 295 Ill.Dec. 525, 833 N.E.2d 7 (2005), cited by Chief Justice Pariente in her dissent, a pedestrian, Mitchell, was stopped on the street without any suspicion of misconduct or criminal wrongdoing. Id. at 644. Further, upon asking for and receiving Mitchell's identification, the police officer discovered an outstanding warrant, arrested him, and later discovered cocaine on his person. Id. at 644-45. In its analysis, the court found the third Brown factor, regarding the purpose and flagrancy of police misconduct, to be the most significant, and, when combined with the first factor, dictated that the evidence be suppressed, despite the discovery of a warrant. Id. at 649-50. The court concluded that the evidence was obtained by exploiting the original illegality of the stop, and that the suppression of the evidence would further the goal of the exclusionary rule, since "it appears to be the only way to deter the police from randomly stopping citizens for the purpose of running warrant checks." Id. at 650.
Similarly, in Sanchez v. State, 803 N.E.2d 215 (Ind.Ct.App.), transfer denied, 803 N.E.2d 215 (Ind.App.2004), the police stopped Sanchez, a pedestrian, to ask if he knew of a person on whom the police officers were attempting to serve a warrant. Id. at 218. The police then asked his identity, and after he failed to produce identification and used a false name, the officers handcuffed him and took him to the police station. Id. Once they learned his true identity, they found an open warrant, arrested him, searched him, and found marijuana. Id. In determining whether the marijuana was admissible, the court looked to the three Brown factors to determine if the outstanding warrant served to dissipate the taint of the illegal stop. Id. at 221-22. The court found that all three factors weighed against attenuation, finding that, despite the discovery of an outstanding warrant, there were no intervening circumstances of any significance that would serve to attenuate the illegal detention from the discovery of the evidence. Id. at 222-23. The court concluded that since the interaction between the police and Sanchez constituted nothing more than an investigatory stop without any reasonable suspicion, the evidence of the marijuana should have been excluded as fruit of the poisonous tree. Id. at 223.
These decisions provide vivid illustrations of situations where the discovery of an outstanding warrant was rejected as a blanket authorization to search after an illegal stop of a citizen. In our society the police are vested with the awesome authority to interfere with a citizen's personal freedom. Personal freedom is, of course, our most cherished value. Our courts must be ever vigilant to be certain that the police do not abuse their awesome authority and that our citizens' personal freedom is protected. These concerns must be balanced against the government's interest in securing the arrest of persons for whom valid warrants have been issued. The challenge to the courts may be difficult but it must be faced in the hope that a just result will be obtained in each instance. I conclude that the majority has reached a just result here.
*1148 PARIENTE, C.J., dissenting.
I respectfully dissent and would approve the Fourth District's decision. Although Justice Anstead concludes that the majority reaches a "just result," I am concerned that the Court's holding puts us on a slippery slope toward significantly less protection from unreasonable searches and seizures. In this case, Frierson was illegally stopped and then arrested on an outstanding warrant that, as it turns out, was not even for him. The illegality is based on two decisions by this Court that were seven and nine years old. Further, upon stopping Frierson for the cracked taillight and failure to signal, the officer focused immediately on the warrants check rather than the alleged traffic infraction.
It is often difficult to determine when a traffic stop is pretextual or in bad faith, and we are justifiably reluctant to question the motives of our law enforcement officers. Nonetheless, because this traffic stop was unquestionably invalid, and because the officer immediately deviated from the purpose for the stop, this is a scenario in which the deterrent purpose of the exclusionary rule would be well served by suppression. In addition, it is my view that the attenuation test of Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), for confessions following illegal arrests is inapplicable under these circumstances.

I. THE DEFENDANT'S ROLE IN ATTENUATION ANALYSIS
The majority applies the Brown attenuation doctrine to this case despite significant factual differences. Brown involved the admissibility of a confession, not any other type of evidence. The issue was whether Miranda warnings dissipated the taint of an illegal arrest. The United States Supreme Court opinion is focused on the unique relationship between the Fourth Amendment right against unreasonable searches and seizures and the Fifth Amendment right against compelled self-incrimination:
The Illinois courts refrained from resolving the question, as apt here as it was in Wong Sun, whether Brown's statements were obtained by exploitation of the illegality of his arrest. They assumed that the Miranda warnings, by themselves, assured that the statements (verbal acts, as contrasted with physical evidence) were of sufficient free will as to purge the primary taint of the unlawful arrest. . . .
. . . .
Although, almost 90 years ago, the Court observed that the Fifth Amendment is in "intimate relation" with the Fourth, Boyd v. United States, 116 U.S. 616, 633, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Miranda warnings thus far have not been regarded as a means either of remedying or deterring violations of Fourth Amendment rights. Frequently, as here, rights under the two Amendments may appear to coalesce since "the `unreasonable searches and seizures' condemned in the Fourth Amendment are almost always made for the purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the Fifth Amendment." Ibid. The exclusionary rule, however, when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth. It is directed at all unlawful searches and seizures, and not merely those that happen to produce incriminating material or testimony as fruits. In short, exclusion of a confession made without Miranda warnings might be regarded as necessary to effectuate the Fifth Amendment, but it would not be sufficient fully to *1149 protect the Fourth. Miranda warnings, and the exclusion of a confession made without them, do not alone sufficiently deter a Fourth Amendment violation.
. . . In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." 371 U.S. at 486, 83 S.Ct. 407. Wong Sun thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.

. . . .
It is entirely possible, of course, as the State here argues, that persons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality. But the Miranda warnings, alone and per se, cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession. They cannot assure in every case that the Fourth Amendment violation has not been unduly exploited.
. . . The question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant. The voluntariness of the statement is a threshold requirement.. . .
. . . .
We emphasize that our holding is a limited one. We decide only that the Illinois courts were in error in assuming that the Miranda warnings, by themselves, under Wong Sun always purge the taint of an illegal arrest.
422 U.S. at 600-05, 95 S.Ct. 2254 (citations omitted) (footnotes omitted) (emphasis added). The Court ruled inadmissible a confession that followed an illegal arrest by less than two hours, with "no intervening event of significance whatsoever." Id. at 604, 95 S.Ct. 2254.
Other courts, including the court in United States v. Green, 111 F.3d 515 (7th Cir.1997), on which the majority relies today, have applied these factors to searches incident to arrest on outstanding warrants discovered during illegal detentions.[1] As *1150 reflected in the majority opinion, appellate courts in other states, relying on Green, have also applied the Brown attenuation test under analogous circumstances. See State v. Page, 140 Idaho 841, 103 P.3d 454, 459 (2004); State v. Jones, 270 Kan. 526, 17 P.3d 359, 360 (2001); State v. Hill, 725 So.2d 1282, 1285 (La.1998). However, the United States Supreme Court has never done so. Given that the instant case does not involve a confession, the Brown attenuation analysis does not clearly govern. In the absence of clear directions from the Supreme Court, I am reluctant to apply the test under these circumstances.
The Court in Brown was concerned with the effect of an illegal arrest on the defendant's free will, i.e., whether it served as a cause in the decision to confess. An analogous situation arises when a defendant consents to a search during an illegal detention. There the fruits of the search are inadmissible unless the State establishes, by clear and convincing evidence, that an unequivocal break in the chain of events leading from the police illegality to the discovery of evidence dissipated the taint of the illegal police conduct. See Reynolds v. State, 592 So.2d 1082, 1086 (Fla.1992); Norman v. State, 379 So.2d 643, 647 (Fla. 1980). This principle is an application of the "poisonous tree" doctrine in which the pertinent question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (quoting John MacArthur Maguire, Evidence of Guilt 221 (1959)).
Unlike the Brown confession scenario, the defendant's free will plays no role in the discovery of evidence in a search incident to arrest pursuant to an active warrant discovered during an illegal stop. This scenario bears little resemblance to that of a defendant who confesses or consents to a search for reasons that may be attenuated from the illegality of the stop. For purposes of the exclusionary rule, the complex "workings of the human mind," i.e., the defendant's decision to confess, can sever the causal chain between a confession and the preceding illegality in a manner that has no parallel in the acquisition of physical evidence in a search incident to arrest.
The distinction between a confession and a physical search following illegal police conduct is reflected in Libby v. State, 561 So.2d 1253 (Fla. 2d DCA 1990), which involves both a confession and a search. There the Second District ruled inadmissible the fruits of a search incident to arrest on an outstanding warrant discovered during an illegal detention, stating only that "[t]he fact that a computer check revealed an outstanding warrant for the appellant does not validate the illegal detention." Id. at 1253. The court then ruled inadmissible the ensuing confession, citing to Brown and noting that "[t]here were no intervening circumstances, such as consultation with counsel or release from custody, to sufficiently attenuate the confession." Id. at 1254.
*1151 Consistent with the distinction reflected in Libby, courts in the decisions relied upon by the Fourth District below looked to the link between the police illegality and the evidence acquired thereby without applying the three-part test of Brown. None of these cases involved a confession. See Solino v. State, 763 So.2d 1249, 1252 (Fla. 4th DCA 2000) (holding that since investigatory stop was unlawful, there was no basis for charge of escape arising from defendant's flight from arrest based on information obtained during stop); Rollins v. State, 578 So.2d 850, 851 (Fla. 2d DCA 1991) (holding that the discovery of an outstanding warrant "does not validate an illegal detention"); Kimbrough v. State, 539 So.2d 619, 619 (Fla. 4th DCA 1989) (holding that physical evidence obtained in search of defendant during detention lacking founded suspicion "would properly be suppressed"); see also Reagan v. State, 667 So.2d 378, 378 (Fla. 1st DCA 1995) (citing to Libby and Kimbrough in holding that "there were no legally sufficient intervening circumstances" that would render admissible fruits of search conducted after illegal initial stop).
In accord with these decisions, I would hold inadmissible the fruits of the search incident to arrest in this case. There is no break in the chain of circumstances from the illegal detention to the discovery of evidence in the form of an act of free will on the part of the defendantbe it a confession or consent to an otherwise unauthorized search. This result well serves the purpose of the exclusionary rule, which is a "judicially created remedy ... designed to discourage governmental misconduct and safeguard against future violations." State v. Johnson, 814 So.2d 390, 394 (Fla.2002).
The illegality of the stop would not, however, invalidate the arrest on the pre-existing warrant discovered during the illegal traffic stop. When determining whether the exclusionary rule should be applied, a court should weigh the benefits of deterrence of police misconduct against the costs of precluding the prosecution from using trustworthy tangible evidence in its case-in-chief. See United States v. Leon, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The costs of invalidating an arrest based on a warrant arising from circumstances unrelated to the illegality of the detention that led to discovery of the warrant outweigh the benefits of deterring illegal traffic stops. Thus, a valid warrant would remain enforceable even when it is executed during an illegal detention. Further, the question arises as to what would be suppressed by invalidating the arrest. Although a defendant's identity at the time of an illegal detention is suppressible, see State v. Perkins, 760 So.2d 85, 89 (Fla.2000), a crime victim's in-court identification of the accused as the perpetrator is not suppressible as the product of an illegal arrest. See id. at 87 n. 5 (citing United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980)). Therefore, the charges in the outstanding warrant can go forward ifunlike this casethe defendant is indeed the person subject to the warrant.

II. ADMISSIBILITY UNDER BROWN V. ILLINOIS

Even applying the Brown criteria, I would hold the evidence in this case inadmissible. As stated above, under Brown the relevant factors are "[t]he temporal proximity of the arrest and the [acquisition of evidence sought to be suppressed], the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct." 422 U.S. at 603-04, 95 S.Ct. 2254 (footnote and citation omitted). Here, the record does not reflect the specific amount of time that passed between the initial stop and the *1152 search incident to arrest, but by all indications it was no more than a few minutes. The officer testified that he obtained a driver's license upon making contact with Frierson, took the license to his patrol car to check license status, tag information, and the existence of warrants, confirmed the validity of an arrest warrant with the dispatcher, took Frierson into custody, and seized a handgun from Frierson's waistband in a search incident to arrest. Frierson gave similar testimony about the sequence of events.
The majority acknowledges that the short span of time between the illegal detention and the arrest weighs against finding the search attenuated, but states that this factor is not dispositive. I would give this factor substantial weight. The purpose of the exclusionary rule is "to compel respect for the constitutional guaranty in the only effectively available wayby removing the incentive to disregard it." Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). An effective disincentive is one in which the link between the action to be discouraged and the negative consequence of that action are clear. The close temporal proximity between police illegality and the discovery of evidence in this case reflects a close causal proximity. The United States Supreme Court has observed that "[w]hen there is a close causal connection between the illegal seizure and the confession, not only is exclusion of the evidence more likely to deter similar police misconduct in the future, but use of the evidence is more likely to compromise the integrity of the courts." Dunaway v. New York, 442 U.S. 200, 218, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Police officers will be less likely to make illegal traffic stops if they are aware that evidence quickly gained thereby will likely be ruled inadmissible. Thus, the factor of temporal proximity weighs strongly against a finding of attenuation.
The second Brown factor is the presence of intervening circumstances, here the arrest pursuant to a warrant naming Frierson. Because the existence of an arrest warrant means that before the alleged illegal detention, a judge has found probable cause that the defendant committed an unrelated crime, the arrest pursuant to the warrant favors attenuation. Cf. Lewis v. State, 915 S.W.2d 51, 54 (Tex.App.1995) (holding that taint of illegal initial seizure was purged by arrest on warrants on which probable cause was "determined independently and judicially before the illegal detention"). Further, as noted in the majority opinion below, suppression of the evidence acquired incident to arrest because another individual used Frierson's name when caught driving with a suspended license would not serve the deterrent purpose of the exclusionary rule and therefore does not weigh in favor of suppression. See Frierson, 851 So.2d at 297-99.
The third consideration under Brown is the purpose and flagrancy of the official misconduct. Here, the officer conducted a traffic stop because Frierson's car had a cracked taillight lens cover and because Frierson took a left turn without signaling. The officer testified that the taillight beneath the lens cover was illuminated and that neither he nor any other drivers were affected by Frierson's failure to signal the turn.
Seven years before the stop in this case, this Court determined that unless other drivers are adversely affected, the failure to signal a turn is not an infraction under the Florida Traffic Code. See State v. Riley, 638 So.2d 507, 508 (Fla.1994). The Court in Riley ruled that marijuana seized from a passenger during a traffic stop under those circumstances must be suppressed. See id. In a separate opinion, Justice McDonald characterized the stop *1153 as obviously pretextual. See id. at 508-09 (McDonald, J., concurring specially). Nine years before the stop in this case, this Court had held that as long as a vehicle has two functioning tail lamps, a cracked lens cover is not a violation of the Florida Traffic Code justifying a traffic stop. See Doctor v. State, 596 So.2d 442, 447 (Fla. 1992). The Court in that case ordered suppression of cocaine discovered in a weapons frisk during the detention. See id. at 444. The officer in this case was evidently unaware of the law as interpreted in either Riley or Doctor.[2] At best, the stop here rested on ignorance of the law.
The majority, agreeing with Judge Gross in his specially concurring opinion below, holds that the third Brown factor weighs in favor of attenuation because there "was no evidence that the stop was pretextual or in bad faith." Majority op. at 1145. To the extent that the term "pretextual" has any remaining currency following the United States Supreme Court decision in Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the majority presumably means that the officer would not have made the stop unless he wished to investigate something else. See State v. Daniel, 665 So.2d 1040, 1043 (Fla.1995) ("In sum, would the officer have made the stop absent any improper motive. If the answer is "yes," then the stop was lawful even if a pretextual motive may have influenced the officer's actions."), receded from by Holland v. State, 696 So.2d 757, 760 (Fla.1997).
The officer in this case testified that he stopped Frierson to inquire about the cracked taillight and failure to signal. However, the testimony of both the officer and Frierson reflects no inquiry by the officer about the alleged violations. Upon stopping Frierson, the officer turned his focus toward the license, tag, and warrants check. Only after the arrest on the warrant did the officer issue citations for the nonexistent traffic and equipment violations. The officer's conduct suggests that he stopped Frierson for no reason other than to ascertain whether he had the right to be on the street driving an automobile.
By comparison, in Green, on which the majority relies, police stopped a car in the good-faith but mistaken belief that it contained a man wanted on a federal warrant. After ascertaining that the wanted man was not in the car, the officer illegally extended the detention to check for outstanding warrants on the car's occupants. See 111 F.3d at 517-18. The Seventh Circuit Court of Appeals held that the continuation of the detention, although illegal, was not in bad faith. See id. at 523. An Illinois court distinguished Green on the flagrancy prong of the Brown test in a case involving a detention of a pedestrian solely to check for warrants:
In Green, the purpose for which the officers stopped the defendant was completely unrelated to the subsequent warrant check that led to the arrest of a passenger in the defendant's vehicle and a search incident to that arrest. In this case, the officers stopped defendant for no apparent reason other than to run a warrant check on him. Thus, the purpose of the stop in this case was directly related to the arrest of defendant, which then led directly to the search of defendant.
*1154 People v. Mitchell, 355 Ill.App.3d 1030, 291 Ill.Dec. 786, 824 N.E.2d 642, 649-50 (2005), appeal denied, 215 Ill.2d 611, 295 Ill.Dec. 525, 833 N.E.2d 7 (2005). In an Indiana case, the appellate court concluded that officers acted flagrantly and with intent to exploit an illegal arrest when they held an individual without reasonable suspicion solely to elicit information about another person's whereabouts. See Sanchez v. State, 803 N.E.2d 215, 222 (Ind.Ct.App.), transfer denied, 812 N.E.2d 804 (Ind.2004). Applying the three-part Brown test, the court in Sanchez ruled inadmissible evidence seized in a search incident to arrest on an outstanding warrant. See id. Given that the officer's actions in this case after stopping Frierson were disconnected from the ostensible rationale for the stop, I consider this case to be closer to Mitchell and Sanchez than Green, and conclude that the stop was pretextual.[3]
Addressing whether the stop in this case was in bad faith, Judge Gross in his separate opinion below stated:
A finding of no reasonable suspicion to make a traffic stop requires a close reading of the traffic statutes and applicable case law. It is not unusual to find police officers who are unable, on the street, to parse the nuances of statutes with the precision of trained jurists.
Frierson, 851 So.2d at 302 (Gross, J., concurring specially) (quoting Green, 111 F.3d at 523). Although I can appreciate the difficulties an officer on patrol must face in interpreting and applying the myriad provisions in the Traffic Code without judicial guidance, in this case any ambiguity in these provisions had been eliminated in Riley and Doctor. The officer had only to apply the traffic laws as interpreted in those cases, not undertake subtle statutory interpretation in the heat of the moment. Because the officer determined that no traffic was affected by Frierson's failure to signal his turn, and because Frierson's car had two working taillights, there was no lawful justification for the stop. This Court noted in Daniel that "[i]t is difficult to operate a vehicle without committing some trivial violation." 665 So.2d at 1042 (quoting Kehoe v. State, 521 So.2d 1094, 1097 (Fla.1988)). Here, no violation occurred, trivial or otherwise. Knowledge of the traffic laws as interpreted by the courts should be imputed to law enforcement officers charged with enforcing those laws.
Further, it appears that the officer exploited the stop by focusing on the warrants check. A detention must be tailored in scope to its underlying justification, and "last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion); see also Cresswell v. State, 564 So.2d 480, 481 (Fla.1990) (holding that a traffic stop may last no longer than the time it takes to write a citation). "[O]nce a police officer has totally satisfied the purpose for which he has initially stopped and detained the motorist, the officer no longer has any reasonable grounds or legal basis for continuing *1155 the detention of the motorist." State v. Diaz, 850 So.2d 435, 438 (Fla. 2003). In this case, the record reflects that the officer did not pursue the ostensible purpose for the stop until after Frierson's arrest on the outstanding warrant. The officer could have mentioned to Frierson the broken taillight and asked him about his failure to signal. If any such discussion occurred, it is not reflected in the record on appeal. Instead, the invalid stop led directly to the warrants check, arrest on an outstanding warrant, search incident thereto, and discovery of the gun. In light of the deterrent purpose of the exclusionary rule, the officer's conduct in this case at least borders on bad faith.
Accordingly, applying the three Brown factors to the facts of this case, I conclude that the temporal proximity of the police illegality to the search incident to arrest and the purpose and flagrancy of the misconduct weigh in favor of suppression, and the nature of the intervening circumstance weighs against suppression. On balance, I would hold that although the prosecution for the offense in the warrant would not be affected by application of the Brown test, the Fourth District correctly held the fruits of the search incident to that arrest inadmissible.

III. CONCLUSION
The exclusionary rule is well tailored for these circumstances: an illegal detention resulting in the seizure of evidence with no action by the defendant, such as a consent or confession, that would sever the causal tie between the illegal conduct and the acquisition of evidence. When police make all the relevant decisions and take all the significant actions starting with an illegal traffic stop and concluding with the discovery of evidence in a search incident to arrest on an outstanding warrant, there is no attenuation and no unequivocal break in the chain of causation that dissipates the taint of the original police illegality. The arrest of the defendant on an active warrant discovered during the illegal detention justifies a search incident thereto, but does not sever the causal connection between the unlawful stop and the search incident to arrest. Accordingly, although an individual may certainly be prosecuted for an offense on which he or she is arrested pursuant to an outstanding warrant discovered during an illegal stop, evidence acquired in a search incident to that arrest should be suppressed.
QUINCE, J., dissenting.
I dissent because I do not believe this Court has jurisdiction to review this case, and I believe that the Fourth District properly found that the stop was illegal and the seized gun was the fruit of that illegality.[4] Therefore, I would either discharge jurisdiction or approve the decision of the Fourth District.
This case came to this Court based on the Fourth District's certification of conflict with State v. Foust, 262 So.2d 686 (Fla. 3d DCA 1972).[5] The State and the Fourth District indicate there is conflict based on the statement from Foust indicating, "It is also our view that the reasonableness of the search after arrest was not affected by the fact that the original stopping of appellee may have been without *1156 probable cause." 262 So.2d at 688 (emphasis added). This statement in the Foust opinion cannot be the basis of jurisdiction because the court never made a finding that the stop was illegal. Indeed we have no indication in the opinion about the circumstances of the stop.
As the majority duly notes, a traffic stop need not be based on probable cause and may be based on founded suspicion. However, the Third District's decision in Foust, reversing a motion to suppress evidence, was not based on either founded suspicion or probable cause. Indeed, the Third District did not address either issue. Its decision turned on the fact that the seizure of the marijuana was made during a search incident to arrest, and because the arrest was pursuant to valid bench warrants which were disclosed to the officer during a radio check, the officers had a right to search the defendant incident to that arrest. The Third District clearly said, "We hold that the arrest of the appellant was valid under the bench warrants which were revealed to the officer by radio check. See Murphy v. State, Fla.App. 1971, 252 So.2d 261, Fla. Stat.; §§ 901.15(4), 901.16, F.S.A. Further, the search of appellee's person incident to such arrest was reasonable." Foust, 262 So.2d at 688.
In this case, I believe that the Fourth District's statement concerning probable cause was mere dicta and not the holding. Thus, there is no conflict with Foust. Because there is no conflict, this Court does not have jurisdiction.
NOTES
[1] Even in adopting the Brown analysis, the court in Green recognized the differences between a case involving a defendant who confesses after an illegal arrest and one involving the discovery of a warrant after an illegal stop:

Typically, the intervening circumstance which dissipates the taint involves a voluntary act by the defendant, such as the voluntary confession or consent to search given after an illegal search or seizure. In intervening circumstance cases involving subsequent action on the defendant's part, courts exercise great care in evaluating the later consent or confession to ensure it is truly voluntary and not the result of the earlier, and unconstitutional, police action. In such cases, the dispositive question is whether the illegal act "bolstered the pressures for him to give the [statement], or at least vitiated any incentive on his part to avoid self-incrimination." In these cases, the time between the illegality and the consent is important because the closer the time period, the more likely the consent was influenced by the illegality, or that the illegality was exploited. Conversely, where a lawful arrest due to an outstanding warrant is the intervening circumstance, consent (or any act for that matter) by the defendant is not required. Any influence the unlawful stop would have on the defendant's conduct is irrelevant.
Green, 111 F.3d at 522 (alteration in original) (citations omitted) (quoting Brown, 422 U.S. at 605 n. 12, 95 S.Ct. 2254).
[2] The officer also suggested that the failure to signal a turn and the cracked lens cover caused him to suspect that the mechanical turn signal on Frierson's car did not function. This could not support a traffic stop because Florida law permits hand signals by drivers of standard size passenger cars. See § 316.156, Fla. Stat. (2005). The arrest report reflects that Frierson was driving a four-door passenger car.
[3] Apart from their reliance on Green, the decisions from other states on which the majority relies are distinguishable on their facts and analysis. The Idaho and Louisiana cases did not involve traffic stops. See Page, 103 P.3d at 455-56; Hill, 725 So.2d at 1283. Accordingly, the courts in those cases did not discuss whether the detentions were pretextual. In the Kansas case, the court proceeded directly to an attenuation analysis without deciding whether the officer violated the Fourth Amendment in obtaining the name and birth date of the passenger in a car legitimately stopped for speeding. The court stated only that there was "no evidence of bad faith" on the part of the officer. Jones, 17 P.3d at 361. In this case, the officer's focus on conducting a warrants check after stopping Frierson for inapplicable traffic infractions presents an entirely different scenario.
[4] Although we may technically have jurisdiction because the district court certified conflict, there is no true conflict on the issue certified, and therefore this court should not exercise jurisdiction in this case.
[5] Any reliance by the majority on the decision of the Second District in Mays v. State, 887 So.2d 402 (Fla. 2d DCA 2004), does not help to demonstrate conflict in this case since it was not cited in this case and indeed was not decided until after this case.