953 So.2d 627 (2007)
Eugene FALLS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-131.
District Court of Appeal of Florida, Fourth District.
March 28, 2007.
*628 Carey Haughwout, Public Defender, Marcy K. Allen, Assistant Public Defender, and Brian Balaguera, Certified Legal Intern, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Eugene Falls appeals an order denying his motion to suppress oxycodone and methadone pills seized during a search incident to an arrest on an outstanding warrant. Police discovered the warrant while performing a teletype search of appellant's license during a consensual encounter. We affirm.
Officer Guy Prosper of the Coral Springs Police Department was training a police dog behind a business in an open field of an industrial park at around 9:00 p.m. Most of the businesses in the industrial area were closed, but a few were still open with overnight employees there. Although most of the area was dark, he was in a field that was fairly lit. Officer Prosper described the crime rate in the area as comparable to that of other areas of the city, but said that there had been nighttime burglaries in the industrial park.
Officer Prosper was fully uniformed and standing beside his car when he noticed appellant cutting through the grass, walking to the rear of the businesses. The officer watched appellant for about thirty seconds and did not see him engage in any *629 criminal activity. Appellant was not looking in the windows of any businesses nor attempting to pry open doors or windows. Further, appellant did not possess or use any burglary tools.
Concerned that appellant's presence in the area was unusual for that time, Officer Prosper approached appellant and asked, "man, how you doing, what are you up to tonight?" Appellant responded that "his cousin's cutting through here, coming home from work, just things like that." He told the officer his name. Officer Prosper could not recall whether appellant offered his identification or if he asked for it. When appellant gave his driver's license to the officer, the officer ran a warrants check. A few minutes later, backup officers notified Officer Prosper that there was an outstanding warrant for appellant's arrest. Appellant was then arrested and searched. During the search, officers discovered six and one-half oxycodone pills, two methadone pills, and a pill bottle on his person.
Appellant filed a motion to suppress the drug evidence seized during the search incident to his arrest. The trial court denied the motion, determining that the totality of the circumstances justified the officer's encounter with appellant and request for identification. Appellant pled no contest to his charges and appealed the denial of the motion to suppress.
Appellant argues that the trial court erred by denying his motion to suppress the evidence seized during the search incident to his arrest on the warrant. He contends that Officer Prosper unlawfully stopped him without a founded suspicion. He maintains that the encounter was not consensual because he did not have a reasonable belief that he was free to leave. As a result of the unlawful stop, the officer discovered the outstanding arrest warrant and thereafter searched him. According to appellant, discovery of the outstanding warrant did not attenuate the taint of the illegal stop.
The state responds that the officer's encounter with appellant was consensual. It further argues that even if there was a stop or detention, it was lawful because it was based on a founded suspicion. Alternatively, the state argues that even if there was an improper stop, the warrant purged any taint.
We afford a presumption of correctness to a trial court's ruling on a motion to suppress and interpret the evidence and reasonable inferences and deductions from that evidence in a light most favorable to sustaining such a ruling. Although we presume a trial court's findings as to historical facts to be correct, we review mixed questions of law and fact that bear on constitutional issues de novo. See Schoenwetter v. State, 931 So.2d 857, 866 (Fla.2006).
Although there is no "litmus-paper test" for determining when a consensual encounter or an investigatory stop has occurred, the Florida Supreme Court provided the following guidance in Popple v. State, 626 So.2d 185, 186 (Fla.1993):
The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.
Id. Describing a detention, the court stated:
The second level of police citizen encounters involves an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). At this level, a police officer may reasonably *630 detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. § 901.151, Fla. Stat. (1991). In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop. Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984).
Id.
We do not agree with the state's fallback position that Officer Prosper had a well-founded, articulable suspicion of criminal activity to justify an investigatory stop of appellant. Instead, we agree with the trial court's conclusion that the interaction between Officer Prosper and appellant was a consensual encounter. The officer testified that when he approached appellant, he did not tell him to stop or direct him to come over to him. He did not call for backup or say or do anything to indicate that appellant was not free to leave. According to the officer, they "were pretty much just conversing," and appellant voluntarily produced his license. As the United States Supreme Court has stated, "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." See United States v. Drayton, 536 U.S. 194, 200, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002).
Furthermore, the fact that the officer asked appellant for his driver's license and retained it to conduct a search for outstanding warrants did not convert the consensual encounter into a stop. See Golphin v. State, 945 So.2d 1174 (Fla.2006). Golphin recently addressed this issue on facts similar to those in this case. In Golphin, two officers approached a group of five men, one member of which was the defendant. Although some of the men left when the officers approached, there was uncontroverted evidence that Golphin never attempted to leave. One of the officers asked the defendant for his identification, which he voluntarily provided, and the officer, without moving, checked the ID for outstanding warrants. After the officer began the check, Golphin stated that he might have an outstanding warrant. The check revealed an outstanding warrant for his arrest and Golphin was arrested. During a search incident to arrest, drugs and paraphernalia were discovered.
The supreme court concluded that the encounter was consensual and did not mature into a seizure simply because the officer retained Golphin's identification to check for outstanding warrants. The supreme court remarked that Golphin was not driving a vehicle at the time of the stop and therefore would not have to violate the law if he left the scene without his driver's license. Further, the court found it significant that the officer did not retain Golphin's identification while asking for consent to search.
Applying its recent decision in State v. Frierson, 926 So.2d 1139 (Fla.2006), the supreme court went on to conclude that even if the encounter in Golphin had amounted to a seizure, suppression of the evidence seized during the search of Golphin would not have been required because the search was incident to his arrest on the outstanding warrant, and there was no evidence of bad faith on the part of the officers. Id. at 1143.
In Frierson, an officer stopped the defendant for operating a vehicle with a cracked taillight and failing to use a turn signal. Id. at 1141. While checking the defendant's identification, the officer discovered an outstanding warrant for the *631 defendant's arrest. In a search incident to the defendant's arrest, police found a firearm. Frierson was charged with possession of a firearm by a convicted felon. The supreme court determined that the firearm did not have to be suppressed, even though the initial stop was unlawful because neither the cracked taillight nor the failure to use a turn signal constituted traffic violations. The court held that the police officer's discovery of the outstanding arrest warrant was an intervening circumstance which dissipated the taint of the illegal traffic stop.
In upholding the search in Frierson, the court first noted the United States Supreme Court's observation in Wong Sun that not all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police.[1] Rather, the court must consider three factors in deciding whether unlawfully obtained evidence should be excluded:
(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct.
Id. at 1143 (quoting United States v. Green, 111 F.3d 515 (7th Cir.1997)).
Applying the three-factor test here, we conclude that, even if appellant was unlawfully stopped, the evidence seized following his arrest on the warrant need not be suppressed. The first factor, as the state concedes, weighs against finding the search attenuated, because only a brief period of time elapsed between the initial encounter with appellant and the discovery of the pills and pill bottle. However, the supreme court stated that this factor is not dispositive. Id. at 1144. The second factor, the intervening circumstance of discovery of the outstanding warrant for appellant's arrest, "weighs in favor of the [evidence] found in a search incident to the outstanding arrest warrant being sufficiently distinguishable from the illegal stop to be purged of the `primary taint' of the illegal stop." Id. at 1144. As did the supreme court in Frierson, we find it significant that the search was made incident to the arrest on the warrant and not as part of an illegal stop. As to the third factor, there is no evidence that Officer Prosper stopped the defendant on a pretextual basis or in bad faith. Officer Prosper stated that he made contact with the defendant because of the late hour and the location, where businesses had been burglarized in the past.
In sum, the record supports a finding that appellant's contact with the police officer was a consensual encounter. The encounter did not become a seizure when the officer obtained appellant's voluntarily produced driver's license for a warrants check. The evidence seized as a result of discovery of the outstanding arrest warrant, arrest of appellant, and search incident to the arrest is not the fruit of an illegal seizure. We therefore affirm the trial court's denial of appellant's motion to suppress.
Affirmed.
WARNER and GROSS, JJ., concur.
NOTES
[1] See Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).