PER CURIAM.
Appellant appeals the trial court’s Final Disposition Order finding Appellant guilty of resisting a law enforcement officer without violence. The order withholds adjudication and places Appellant on probation.
Appellant asserts two bases for reversal: 1) the trial court’s denial of his timely motion for judgment of dismissal; and 2) the trial court’s decision to admit testimony he contends was hearsay. As explained below, we affirm as to the first issue. We affirm as to the second issue without further comment.

Factual Summary

Officers Fahey and Chance, the two police officers involved in the incident in question, testified they went to a residence in response to an anonymous telephone call informing them that a person with an outstanding warrant, one Corey Johnson, was at the residence. The only description the caller gave was that the alleged fugitive was a black male. Officer Fahey went to the front door of the house and Officer Chance went around to the rear to prevent escape. After Officer Fahey knocked on the door, a man answered and provided information that he was not the person whom Officer Fahey was looking for. Officer Fahey saw Appellant and asked if he *993 was the person being sought; Appellant said he was not and did not have any identification. After the front door was closed, Officer Fahey went around the house to discuss matters with Officer Chance.
Officer Chance informed Officer Fahey that he had encountered a young girl who told him that the man they were looking for was hiding in the house. The officers then contacted their sergeant and requested his presence. Officer Fahey testified that, before the sergeant’s arrival, he saw some children leaving the residence, which did not raise any concern. Sometime after the sergeant arrived, however, the sergeant discovered there was no water or electrical service on in the house. Officer Fahey farther testified that police learned from neighbors that children lived in the residence.
Soon after the discovery that children were living in a house without water or electricity, Appellant and the man who had answered the door left the house. Officer Fahey testified that he approached Appellant and again asked for identification; Appellant responded that it was in the house and, when asked to retrieve it, Appellant said the door was locked, thus, he could not get to it. Officer Fahey explained to Appellant that police were looking for an individual with a warrant, a Corey Johnson, and that they were now investigating a felony case of child neglect, thus, he needed to identify Appellant. Officer Fahey also told Appellant that if he couldn’t provide identification, they would have to fingerprint him for identification. Officer Fahey testified that he needed to know if Appellant was a parent, the person with the outstanding warrant, or a minor, and therefore a potential victim of child neglect.
Appellant did not respond to Officer Fa-hey’s explanation as to why he needed identification. Officer Fahey then grabbed Appellant underneath the armpit of his left arm and attempted to escort him to the police cruiser. Appellant “jerked away,” and at that point, Officer Fahey testified, Appellant was under arrest for resisting.
At the close of the State’s case, Appellant moved for judgment of dismissal, contending the issue was whether the officers were exercising a lawful duty at the time Appellant resisted. Appellant argued they were not. The trial court denied the motion, relying on the original call to the officers informing them of a wanted person at the address, the subsequent information from the child in the rear of the house regarding the potential fugitive, which in turn led to the discovery that there was no water or electricity in the home, which gave rise to “a subsequent investigation regarding the suitability of the home [for] children or whether there was a violation of failure to provide necessities at the home.” The court concluded that, based on the information police had at the time, they had sufficient reason to conduct a stop and try to ascertain the identity of the child.

Analysis

“[A] motion in a juvenile delinquency proceeding is akin to a motion for judgment of acquittal in an adult criminal trial,” and “review of the denial of a motion for judgment of dismissal is de novo.” J.W.J. v. State, 994 So.2d 1228, 1224 (Fla. 1st DCA 2008). “The question presented by the motion is whether the evidence is legally adequate to support the charge.” Jones v. State, 790 So.2d 1194, 1197 (Fla. 1st DCA 2001). “A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. The courts should not grant a *994 motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.” Lynch v. State, 293 So.2d 44, 45 (Fla.1974).
“To obtain a conviction for resisting an officer without violence, the State must prove (1) that the officer was engaged in the lawful execution of a legal duty and (2) that appellant’s actions amounted to obstruction or resistance of that lawful duty.” D.T. v. State, 87 So.3d 1235, 1239 (Fla. 4th DCA 2012). “In order not to violate a citizen’s Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.” Popple v. State, 626 So.2d 185, 186 (Fla.1993). Here, Appellant argues that the State failed to establish that the police were engaged in the lawful execution of a legal duty when the resistance occurred. The State contends that the police had two sufficient reasons to stop Appellant: 1) the need to ascertain whether Appellant was the subject of the fugitive warrant; and 2) the need to investigate a child neglect case which, in turn, necessitated ascertaining whether Appellant was a victim or a suspect.
We agree with the State as to the second ground: Regardless of whether the officers were justifiably at the house, after discovering the house lacked any water or electrical service, police had a legitimate basis for temporarily detaining Appellant based on a reasonable suspicion that he was either a child neglect victim or the parent of a child neglect victim and, thus, subject to arrest.[1] See, e.g., State v. Frierson, 926 So.2d 1139, 1143-45 (Fla.2006) (explaining that information obtained after an initially illegal arrest or search can be admissible if the information is gained as a result of an intervening circumstance if a search incident to that circumstance is sufficiently distinguishable from the illegal stop so as to purge the taint of that illegality, and the police misconduct was not flagrant). As required by law, we view the officers’ conduct under an objective standard. See Whren v. U.S., 517 U.S. 806, 812, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (“Not only have we never held, outside the context of inventory search or administrative inspection (discussed above), that an officer’s motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary.”). Under this standard, the officers had a reasonable suspicion that Appellant could be the victim of child neglect and required state protection. Thus, objectively, Appellant’s temporary detention was justifiable under the circumstances. Even if the initial investigation was not lawful, the subsequent investigation of child neglect was lawful and was sufficiently distinguishable from the initial investigation to purge the taint of illegality.

Conclusion

For the foregoing reasons, we AFFIRM the trial court’s order withholding adjudication of delinquency and imposition of probation.
WOLF and THOMAS, JJ., concur.
CLARK, J., Dissenting with Written Opinion.

. We note that, ultimately, Appellant’s mother was arrested for child neglect.