641 So.2d 419 (1994)
Mitchell Scott NEWBERGER, Appellant,
v.
STATE of Florida, Appellee.
No. 92-02732.
District Court of Appeal of Florida, Second District.
July 29, 1994.
Rehearing Denied August 29, 1994.
James Marion Moorman, Public Defender and Andrea Norgard, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
RYDER, Acting Chief Judge.
Mitchell Scott Newberger was convicted of the crimes of modifying intellectual property and making a false statement to obtain a credit card. On appeal, he argues that section 815.04, Florida Statutes (1991), which criminalizes modification of intellectual property, is unconstitutional. He also asserts that the evidence was insufficient to support his convictions for both offenses. We hold that section 815.04 is constitutional, and affirm on that point. We also find that the evidence supported Newberger's conviction for making a false statement to obtain a credit card and affirm without discussion of the law and facts relevant to that charge. We reverse his convictions for modifying intellectual property.
Newberger was a new accounts credit analyst at Maas Brothers. When a customer applied for a new credit card, the analyst would enter information from the customer's credit application into a computer. The computer would automatically transmit the information to the credit bureau, and the applicant would be approved or denied based on *420 the credit bureau report. The computer contained a feature that allowed the analyst to bypass the transmission to the credit bureau by pressing the number nine key. The analysts referred to this function as "nining" the system. When the "nine" procedure was used, the system created a record of the use. Maas Brothers authorized the analysts to "nine" the system in certain situations, none of which are applicable here.
The state charged Newberger with two counts of violating section 815.04 based on his use of the nine key in opening two accounts, and a third count as a principal based on another analyst's use of the nine key. The parts of the statute pertinent to the charges against Newberger are as follows:
(1) Whoever willfully, knowingly, and without authorization modifies data, programs, or supporting documentation residing or existing internal or external to a computer, computer system, or computer network commits an offense against intellectual property.
... .
(4)(b) If the offense is committed for the purpose of devising or executing any scheme or artifice to defraud or to obtain any property, then the offender is guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 815.04, Fla. Stat. (1991)
After a bench trial, the court adjudicated him guilty of the charges based on violation of this statute.
Newberger first argues that the statute is unconstitutionally vague. He notes that it does not define two operative terms, "modifies" and "data." Thus, he contends, a person of common understanding is not put on notice about what conduct the statute proscribes. See L.L.N. v. State, 504 So.2d 6 (Fla. 2d DCA 1986). In order to survive a vagueness challenge, a criminal statute must be written with sufficient specificity to give citizens fair warning of what is offending conduct and to prevent law enforcement officers from engaging in arbitrary and erratic enforcement. Warren v. State, 572 So.2d 1376 (Fla. 1991).
The rules of statutory construction require that courts give statutory language its plain and ordinary meaning, unless the words are defined in the statute. Southeastern Fisheries Ass'n, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984). If necessary, the plain, ordinary meaning of a word can be found by looking in a dictionary. Gardner v. Johnson, 451 So.2d 477 (Fla. 1984). Webster's Third New International Dictionary (1986) defines "data" as "detailed information of any kind;" it defines "modify" as "to change the form or properties of for a definite purpose." These words are not archaic or obscure. We believe they have a common meaning and that an ordinary person would know what acts the statute forbids. We therefore hold that section 815.04, Florida Statutes (1991), is not unconstitutionally vague.[1]
While we hold the statute is constitutional, we do not believe the evidence here supported convictions for modifying intellectual property. We first looked at the plain language of the statute. We note that Newberger's acts appear to be an unauthorized use of the computer. We do not believe, however, that his use of an existing computer function "change[d] the form or properties" of the "detailed information" resident in the computer or the system. The state asserts that the record left when Newberger used the nine key is a sufficient modification to the system to bring him within the ambit of the statute. It further contends that "[e]very keystroke that [Newberger] entered into the computer in the processing of a credit application changed the data in the computer." The state reads section 815.04 too broadly. The record left in the system did not modify *421 the existing data in any way, it merely added additional material. While cases may exist where the addition of information to a computer will constitute a modification, this is not one of them.
Because no Florida courts have interpreted this statute, we reviewed the laws of our sister states for guidance. Most states have now enacted statutes to prevent computer crimes. Hurewitz and Lo, Computer-Related Crimes, 30 Am.Crim.L.Rev. 495 (Spring 1993). We attempted to find cases interpreting the word "modify" in such a statute. In New York v. Versaggi, 83 N.Y.2d 123, 125, 608 N.Y.S.2d 155, 156, 629 N.E.2d 1034, 1035 (Ct.App.N.Y. 1994), the defendant was charged under a statute that provided: "[a] person is guilty of computer tampering ... when he uses ... a computer ... and having no right to do so he intentionally alters in any manner or destroys computer data or a computer program of another person." The term "alter" was not defined in the statute. The court found that its ordinary meaning was "to change or modify" and to make "different in some particular characteristic without changing it into something else." 83 N.Y.2d at 129, 608 N.Y.S.2d at 159, 629 N.E.2d at 1038. A computer application program ran the telephones at the company where Versaggi worked. He used the computer codes contained within the system to shut it down and thus completely disrupted his employer's telephone service. The court held that when the defendant disconnected the application programs and commanded the computers to shut down, he altered the programs in some manner. As such, his conduct constituted computer tampering.
In light of the New York court's construction of the word "alter," we believe that statute is similar to ours and the court's reasoning could be instructive. Because the facts of this case are sufficiently different from those in Versaggi, however, we find that the same result is not warranted here. Newberger used, albeit without authorization, a computer function that had been programmed for the analysts' use. Versaggi used codes within the system to totally disable it, changing the existing function of the programs. It took technicians an hour and a half, and some forty computer commands, to restore the phone service. Versaggi's acts changed what the system was designed to do, Newberger's acts did not. As such, the Versaggi case does not assist our analysis.
A case more analogous to our facts is Tennessee v. Joyner, 759 S.W.2d 422 (Tenn. Ct. App. 1987). Joyner was a credit counsellor for Memphis Light, Gas & Water (MLG & W) and assisted customers who were having difficulty paying their bills. Often these delinquent customers would make a partial payment to the credit counsellor to ensure that their utility service would continue uninterrupted. Joyner devised a scheme whereby she used the company's computer to call up the customer's account and print a duplicate bill. The customer would then pay in cash, which Joyner pocketed. Joyner also used the computer to obtain account numbers for "bad debts" accounts that the utility would soon write off as uncollectible. Joyner would then use a forged counter check to pay the bill for the customer who had given her cash. She would note an account number for one of the "bad debt" accounts on the back of the check. When the bank returned the check as uncollectible, it would then be charged back against the "bad debt" account. MLG & W usually wrote off these accounts without further investigation. Using this scheme, and variations on it, Joyner was able to skim large amounts of money from her employer. 759 S.W.2d at 426, 427.
Tennessee has enacted a statute that provides:
Whoever knowingly, directly or indirectly, accesses, causes to be accessed, or attempts to access any telephone system, telecommunications facility, computer software, computer program, data, computer, computer system, computer network, or any part thereof, for the purpose of:
... .
Obtaining money, property, or services for oneself or another by means of false or fraudulent pretenses, representations, or promises violates this subsection and is subject to the penalties [listed].
§ 39-14-602, Tenn. Code Ann. (1993)
Joyner was charged and convicted under the virtually identical predecessor statute to *422 the one quoted. We find Joyner's conduct similar to Newberger's. They both used the existing abilities of the computer to commit a fraud on their employers. We note that section 815.06, Florida Statutes (1991)[2], which criminalizes accessing a computer without authorization, is similar to the statute under which Joyner was charged. The chapter defines access as:
to approach, instruct, communicate with, store data in, retrieve data from, or otherwise make use of any resources of a computer, computer system or computer network.
§ 815.03(10), Fla. Stat. (1991).
It may be that section 815.06 more aptly describes the conduct Newberger engaged in. He instructed the computer to bypass the credit bureau function. As a result, new data, a record of his use of the nine key, was stored in the system. Newberger was not, however, charged under this statute, so we offer no opinion about whether his acts would have violated it. See generally Gallagher v. State, 618 So.2d 757 (Fla. 4th DCA 1993) (Glickstein, J. dissenting) (an employee who exceeds his authorized access to a computer should not be subject to criminal sanctions under section 815.06). We do hold that the evidence at trial did not support his convictions for the three counts charging modification of intellectual property under section 815.04. We therefore reverse these convictions and remand to the trial court to enter a judgment of acquittal on those counts.
Finally we note that Florida was in the forefront in attempting to address the new problems arising from the advent of widespread computer use. Our legislature, in 1978, was the first to enact a specialized computer crimes statute. Hurewitz & Lo, supra, at n. 144. At that time it specifically found that "[c]omputer related crime is a growing problem in government as well as the private sector." § 815.02, Fla. Stat. (1979). The other states' legislatures must have agreed because now all but one have enacted similar provisions. Our review of these statutes disclosed that some states have enacted specific provisions that criminalize behavior arguably not forbidden under Florida's statutory scheme. Missouri, for example, prohibits invasion of privacy by use of a computer. § 569.095(5), Mo. Rev. Stat.Ann. (1991) (computer tampering occurs when a person "[a]cesses a computer, computer system, or a computer network and intentionally examines information about another person"). California has criminalized the knowing introduction of a "computer contaminant" such as a virus or worm into a computer, network or system. § 502, Ca.Penal Code (1992). Because of the explosion in computer use since 1978, and the probable continuing growth in the number and variety of computer crimes committed, the Florida legislature may wish to revisit our statutory scheme.
Affirmed in part, reversed in part and remanded.
CAMPBELL and FULMER, JJ., concur.
NOTES
[1] Newberger also contends on appeal that the statute is unconstitutionally overbroad. As the state points out, he did not raise this issue before the trial court. It cannot, therefore, be considered on appeal. Even if this argument had been raised below, it does not aid Newberger. The overbreadth doctrine applies only to conduct protected by the First Amendment. Southeastern Fisheries, 453 So.2d at 1353. Newberger did not and cannot contend that his conduct is afforded First Amendment protection.
[2] The portion of section 815.06 that might be relevant here provides:

(1) Whoever willfully, knowingly, and without authorization accesses or causes to be accessed any computer, computer system, or computer network; ... commits an offense against computer users.
... .
(2)(b) If the offense is committed for the purposes of devising or executing any scheme or artifice to defraud or to obtain any property, then the offender is guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.