ORFINGER, J.
The State appeals the trial court’s determination that Blake Alan Silliman was immune from prosecution for possession of heroin. We reverse.
Orange County Deputy Sheriff Jeffrey Kushel responded to a call from a business owner who asked that Silliman be given a trespass warning and escorted off the business’s property. When Deputy Kushel arrived, he observed Silliman in an area known for heroin dealing and narcotics trafficking. He approached Silliman and identified himself as a deputy. He noticed that Silliman exhibited signs of intoxication, including swaying, bloodshot eyes and slow, rambling speech. Silliman told the deputy that he was taking medication for back pain, but Deputy Kushel observed an orange cap extending from Silliman’s front pants pocket, which he knew usually capped a syringe used to inject narcotics.
Silliman’s mother, who was in the area searching for her son, then came into contact with Deputy Kushel and Silliman. She expressed concern that Silliman was using drugs. Based on her concerns and his own observations, Deputy Kushel took Silliman into custody pursuant to the Marchman Act, codified in chapter 397 of the Florida Statutes. Before transporting Silliman, Deputy Kushel searched him and removed the object from Silliman’s pocket, which was a syringe containing a clear liquid, later determined to be heroin. Silli-man was then transported to a drug treatment facility, not a hospital or a jail.
Ultimately, Silliman was charged with possession of heroin. The charge was dismissed based on the trial court’s determination that Silliman was entitled to immunity under section 893.21(2), Florida Statutes (2013), which provides:
(2) A person who experiences a drug-related overdose and is in need of medical assistance may not be charged, prosecuted, or penalized pursuant to this chapter for possession of a controlled substance if the evidence for possession of a controlled substance was obtained *247 as a result of the overdose and the need for medical assistance.
On appeal, the State contends that this statute does not apply because Silliman was not experiencing a drug overdose and did not need medical assistance. Instead, the deputy believed that Silliman was impaired and took him into custody under the Marchman Act. We agree.
The Marchman Act, section 397.675, Florida Statutes (2013), allows the involuntary commitment of an individual when there is a good-faith reason to believe that he is substance abuse impaired, and, as a result, has lost self-control due to substance abuse and either may cause harm to himself or others or is need of substance-abuse services. A law enforcement officer may utilize these protective custody measures if an individual who appears to meet this criteria is brought to the attention of law enforcement or is in a public place. § 397.677, Fla. Stat. (2013). Thus, section 397.675 applies to persons who are substance abuse impaired and require substance abuse services, while section 893.21(2) concerns individuals who are experiencing a drug-related overdose and are in need of medical assistance.
Legislative intent is the polestar that guides statutory interpretation. Bautista v. State, 863 So.2d 1180, 1185 (Fla.2003). To discern legislative intent, courts first look to the language of the statute, because legislative intent is determined primarily from the statute’s text. Anderson v. State, 87 So.3d 774, 777 (Fla.2012). If statutory language is “clear and unambiguous and conveys a dear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.” Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). Courts may determine the plain and obvious meaning of a statute’s text by referring to dictionaries. State v. D.C., 114 So.3d 440, 441-42 (Fla. 5th DCA 2013).
We think the two statutory provisions are clear, even though the word “overdose” has not been defined by the Legislature. The dictionary informs us that “overdose” means “too great a dose (as of a therapeutic agent); also: a lethal or toxic amount (as of a drug).” Overdose Definition, Merriam-Webster Dictionary, http://www.merriam-webster.com/ dictionary/overdose (last visited May 26, 2015). It has also been defined as “[a]n excessive and dangerous dose of a drug.” Overdose Definition, Oxford Dictionaries, http://www.oxf orddictionaries.com/us/defi-nition/american_denglish/overdose (last visited May 26, 2015).
Here, Silliman showed signs of drug impairment, but no signs of a drug overdose. He did not exhibit symptoms of extreme physical illness or impending death. Silli-man did not request or appear to require medical assistance. Quite simply, he was “high.” Deputy Kushel took Silliman to a facility to receive treatment for his drug impairment, not to receive medical assistance, and neither Deputy Kushel nor the facility provided medical assistance to Silli-man. Since Silliman did not exhibit signs of a drug overdose requiring medical assistance, section 893.21(2) does not apply. Thus, we conclude the trial court erred in granting Silliman immunity based on section 893.21(2) and reverse.
REVERSED.
WALLIS and LAMBERT, JJ., concur.