DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

STATE OF FLORIDA,

Appellant,

v.

ANTHONY LEVERN WAITERS,

Appellee.

No. 2D21-1477

_____

September 23, 2022

Appeal from the Circuit Court for Manatee County; Lon S. Arend,
Judge.

Ashley Moody, Attorney General, Tallahassee, and Peter N.
Koclanes, Assistant Attorney General, Tampa; Lindsay Danielle
Turner, Assistant Attorney General, Tampa (substituted as counsel
of record); and Taylor A. Schell (substituted as counsel of record),
for Appellant.

Larry L. Eger, Public Defender, and Layron Jamie Gaither, Assistant
Public Defender, Bradenton, for Appellant.


LaROSE, Judge.

> For want of a nail the shoe was lost.
> For want of a shoe the horse was lost.

> For want of a horse the rider was lost.
> For want of a rider the message was lost.
> For want of a message the battle was lost.
> For want of a battle the kingdom was lost.
> And all for the want of a horseshoe nail.

Benjamin Franklin, *Poor Richard's Almanac* 275 (G.P. Putman's Sons eds. 1889) (1758). In Mr. Franklin's tale, a lone lost nail leads to a lost kingdom. This attenuated chain of events highlights the pitfalls of employing "but for" causation in the context of criminal liability and, as relevant here, immunity from prosecution.

The State appeals the trial court's order finding that "but for" causation immunized Anthony Levern Waiters from prosecution for drug-related offenses under the 911 Good Samaritan Act, § 893.21(2), Fla. Stat. (2020). *See* ch. 12-36 § 1, Laws of Fla. We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A); 9.140(c)(1)(A). Because the contraband was not obtained as a proximate, or direct, result of Mr. Waiter's seeking medical assistance, we reverse.

## I. Factual and Procedural Background

The relevant facts are not in dispute. Mr. Waiters used crack cocaine. He then began acting erratically, running around inside his sister's home, screaming, and grasping at his chest. Alarmed, his sister called 911.

2

Emergency medical services (EMS) personnel arrived in response to a possible drug overdose.  Later, law enforcement officers arrived and evaluated Mr. Waiters under the Marchman Act[1] to determine whether he needed to be taken into protective custody.  EMS concluded that Mr. Waiters could be released without hospitalization.  In fact, Mr. Waiters signed a release declining further medical attention.

Mr. Waiters provided his name and date of birth to the attending EMS personnel and law enforcement officers.  Running this information through dispatch, the law enforcement officers learned that Mr. Waiters had an outstanding felony arrest warrant.

Upon concluding that Mr. Waiters did not meet the Marchman Act criteria, and after he had declined further medical attention, the law enforcement officers arrested him.  Before patting down Mr. Waiters and putting him in the patrol car, the law enforcement officers asked if there was anything on his person that posed a danger of sticking/poking the officers.  Mr. Waiters admitted having a broken crack pipe stem and a piece of crack rock in his pocket.  Thereafter, the State charged Mr. Waiters with possession of a

---

[1] §§ 397.301-.998, Fla. Stat. (2020).

controlled substance and possession of drug paraphernalia. §§ 893.13(6)(a), .147(1), Fla. Stat. (2020).

Mr. Waiters moved to dismiss the charges pursuant to section 893.21. He claimed that he was immune from prosecution because the contraband was "obtained as a result of [his] . . . seeking medical assistance." After an evidentiary hearing, the trial court granted the motion:

> I'm going to go back to the language of [subsection] (2). It says, "If the evidence for such offense was obtained as a result of the person seeking medical assistance," I do find that that would -- the drugs [and] paraphernalia would not have been found on Mr. Waiters **but for** the call for help, in that the whole purpose of this statute I still find is to give people the safety and security where the family will call for them if they're clutching their chest for him to call on his own.

(Emphasis added). After the trial court rendered a written "Order on Defense Motion to Dismiss," the State appealed.[2]

---

[2] The order from which the State originally appealed simply granted Mr. Waiters immunity from prosecution. The order did not dismiss the information. It was, therefore, not an appealable order. *See State v. Odom*, 24 So. 3d 1266, 1267-68 (Fla. 1st DCA 2009) (concluding that the State was not authorized to appeal the trial court's order granting defendants' motions to dismiss as the order did not actually dismiss the indictment or any count thereof). After we relinquished jurisdiction, the trial court rendered an appealable order dismissing the charges.

## II.    Standards of Review

We employ two standards in reviewing the trial court's order. First, we apply de novo review to the trial court's interpretation of the statute.  *Johnson v. State*, 78 So. 3d 1305, 1310 (Fla. 2012) ("Judicial interpretations of statutes are pure questions of law subject to de novo review." (citing *State v. Sigler*, 967 So. 2d 835, 841 (Fla. 2007))).

To that end, "[l]egislative intent guides statutory analysis, and to discern that intent we must look first to the language of the statute and its plain meaning."  *Tasker v. State*, 48 So. 3d 798, 804 (Fla. 2010) (alteration in original) (quoting *Fla. Dep't of Child. & Fam. Servs. v. P.E.*, 14 So. 3d 228, 234 (Fla. 2009)); *Calabro v. State*, 995 So. 2d 307, 314 (Fla. 2008) ("This Court has held from time immemorial that we must primarily determine the effect and purpose of statutes and rules of court by first examining the actual words used in the statute or rule and determine the plain meaning of those words."); *see also Bautista v. State*, 863 So. 2d 1180, 1185 (Fla. 2003) ("Our purpose in construing a statutory provision is to give effect to legislative intent.  Legislative intent is the polestar that guides a court's statutory construction analysis." (citing *State v.*

*J.M.*, 824 So. 2d 105, 109 (Fla. 2002))). "When the statutory language is clear or unambiguous, [we] need not look behind the statute's plain language or employ principles of statutory construction to determine legislative intent." *English v. State*, 191 So. 3d 448, 450 (Fla. 2016).

"If the statutory text is ambiguous, however, we turn to rules of statutory construction to determine its meaning." *State v. Kwitowski*, 250 So. 3d 210, 213 (Fla. 2d DCA 2018). "Statutory language is ambiguous when it could be reasonably understood as meaning two—or potentially more—different things." *Id.*; *see Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992) ("Ambiguity suggests that reasonable persons can find different meanings in the same language."); *Houston v. City of Tampa Firefighters & Police Officers' Pension Fund Bd. of Trs.*, 303 So. 3d 233, 240 (Fla. 2d DCA 2020) ("Statutory language is ambiguous when it is reasonably susceptible of more than one interpretation."). We are mindful that we should not seek out ambiguity when it does not exist. There is, after all, "a difference between ambiguity and unexpressed intention." *Forsythe*, 604 So. 2d at 455.

Second, we utilize a mixed standard of review when determining whether an individual is entitled to statutory immunity:

> The question of entitlement to immunity under the Stand Your Ground law "is a mixed question of law and fact because to answer it one must determine the governing law as stated in the statute, find the operative facts, and apply the law to those facts." This court reviews the lower court's findings of fact for competent, substantial evidence, and we review the court's conclusions of law de novo.

*Huckelby v. State*, 313 So. 3d 861, 865 (Fla. 2d DCA 2021) (quoting and citing *Bouie v. State*, 292 So. 3d 471, 479 (Fla. 2d DCA 2020)).

With these ground rules in place, we begin by identifying the issues before us. After that, we will proceed with our analysis of the statutory language. Then, we will review Mr. Waiters' entitlement to statutory immunity.

## III. Section 893.21(2) and the issues before us

Under section 893.21(2),

> [a] person who experiences, or has a good faith belief that he or she is experiencing, an alcohol-related or a drug-related overdose and is in need of medical assistance may not be arrested, charged, prosecuted, or penalized for a violation of [section] 893.147(1) or [section] 893.13(6), excluding paragraph (c), if the evidence for such offense was obtained as a result of the person's seeking medical assistance.

7

The parties invite us to discern the meaning of "as a result of." *Id.* Essentially, we must determine whether an intervening cause (the outstanding arrest warrant) leading to the discovery of the contraband is sufficient to break the causal chain. If so, the discovered evidence falls outside the ambit of Mr. Waiters' seeking medical assistance.[3] In other words, we first must determine whether "as a result of" calls for "but for" or proximate causation. Next, because the facts are not in dispute and our review is de novo, we then apply the proper test of causation to the undisputed facts.

## IV. Analysis

### A. The statutory language

The statute does not define the phrase "as a result of."[4] *See Newberger v. State*, 641 So. 2d 419, 420 (Fla. 2d DCA 1994) ("The

---

[3] Because resolution of this issue is dispositive of our case, we do not reach the remaining issue the State raises on appeal.

[4] Other states have adopted similar laws; however, the statutory language in some is more explicit. *See, e.g.*, Ga. Code Ann. § 16-13-5(b) (West 2014) ("Any person who is experiencing a drug overdose and, in good faith, seeks medical assistance for himself or herself or is the subject of such a request shall not be arrested, charged, or prosecuted for a drug violation if the evidence for the arrest, charge, or prosecution of such drug violation *resulted solely from* seeking such medical assistance." (emphasis added));

8

rules of statutory construction require that courts give statutory language its plain and ordinary meaning, unless the words are defined in the statute.").  Consequently, "the plain and ordinary meaning of [a] word can be ascertained by reference to a dictionary."  *Sieniarecki v. State,* 756 So. 2d 68, 75 (Fla. 2000) (quoting *Green v. State,* 604 So. 2d 471, 473 (Fla. 1992)).

"Result" is defined as "[a] consequence, effect, or conclusion"; or [t]hat which is achieved, brought about, or obtained, esp[ecially] by purposeful action."  *Black's Law Dictionary* 1509 (Deluxe 10th ed. 2014).  Elsewhere, "result" is defined as "something that results as a consequence, issue, or conclusion" and "something obtained by calculation or investigation."  *Result,* Merriam-Webster Dictionary,

---

Md. Code Ann., Crim. Proc. § 1-210(b) (West 2016) ("A person who, in good faith, seeks, provides, or assists with the provision of medical assistance for a person reasonably believed to be experiencing a medical emergency after ingesting or using alcohol or drugs shall be immune from criminal arrest, charge, or prosecution for a violation of § 5-601, § 5-619, § 5-620, § 10-114, § 10-116, or § 10-117 of the Criminal Law Article if the evidence for the criminal arrest, charge, or prosecution was obtained *solely as a result* of the person's seeking, providing, or assisting with the provision of medical assistance." (emphasis added)); N.H. Rev. Stat. Ann. § 318-B:28-b (2021) (creating a defense to enumerated drug possession charges "if the evidence for the charge was gained as a *proximate result* of the request for medical assistance or the report to law enforcement" (emphasis added)).

9

https://www.merriam-webster.com/dictionary/result (last visited Aug. 16, 2022). "Result" is also defined as "something that happens or exists because of something else" and "as a result of something." *Result*, Cambridge Dictionary, https://dictionary.cambridge.org /us/dictionary/english/result (last visited Aug. 16, 2022). These definitions are not helpful. In contrast, each party offers a reasonable, albeit different, interpretation of what "result" means, supported by out-of-state cases. *Compare State v. Miller*, 141 N.E.3d 604, 612-13 (Ohio Ct. App. 2019), *with State v. W.S.B.*, 180 A.3d 1168, 1179 (N.J. Super. Ct. App. Div. 2018). Thus, we resort to the rules of statutory construction.

> "[I]f the statutory intent is unclear from the plain language of the statute, then 'we apply rules of statutory construction and explore legislative history to determine legislative intent.' " [*Koile v. State*, 934 So. 2d 1226, 1231 (Fla. 2006) (quoting *BellSouth Telecomms., Inc. v. Meeks*, 863 So. 2d 287, 289 (Fla. 2003))]. Among the basic principles of statutory construction is that statutes relating to the same subject matter must be read together, or *in pari materia*. *Fla. Dep't of State v. Martin*, 916 So. 2d 763, 768 (Fla. 2005) ("The doctrine of *in pari materia* is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent.").

*Fla. Dep't of Highway Safety & Motor Vehicles v. Hernandez*, 74 So. 3d 1070, 1074-75 (Fla. 2011).

The original version of the statute provided as follows:

> A person who experiences a drug-related overdose and is in need of medical assistance may not be charged, prosecuted, or penalized pursuant to this chapter for possession of a controlled substance if the evidence for possession of a controlled substance was obtained as a result of the overdose and the need for medical assistance.

§ 893.21(2), Fla. Stat. (2012). We know that "[b]ecause there is no stated exclusion from being charged, prosecuted or penalized for a person who has committed any other offenses or who has an outstanding arrest warrant, such an exclusion should not be presumed." Fla. S. Crim. Just. Comm., S.B. 278 (2011) Staff Analysis 5 (Oct. 19, 2011), *available at* https://www.flsenate.gov /Session/Bill/2012/278/Analyses/2012s0278.cj.PDF; Fla. S. Health Regul. Comm. S.B. 278 (2011) Staff Analysis 5 (Jan. 21, 2012), *available at* https://www.flsenate.gov/Session/Bill /2012/278/Analyses/2012s0278.hr.PDF (same).

Apparently, the legislature did not intend to immunize individuals seeking medical assistance for a drug overdose from arrest pursuant to an outstanding arrest warrant. It would certainly be incongruous, then, for an individual to evade criminal liability under section 893.21(2) for any contraband discovered

11

pursuant to an arrest on an outstanding warrant.[5]  *Cf. State v. Frierson*, 926 So. 2d 1139, 1144 (Fla. 2006) (observing that an "outstanding arrest warrant [i]s a judicial order directing the arrest of respondent whenever the respondent [i]s located"); *see generally United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.").

Were we to accept the trial court's "but for" causation test, an individual would enjoy immunity beyond that intended by the statute.  According to Mr. Waiters, an arresting officer must turn a blind eye to any contraband discovered pursuant to a search incident to arrest on an outstanding warrant because the series of events leading to that discovery began with Mr. Waiters' need for medical assistance for a suspected drug overdose.  This is, indeed, a strained reading of the statute; it ignores the legislative intent reflected in section 893.21(2)'s staff analysis.

---

[5] As noted above, the operative version of the statute in this case is from 2020.  The statute was amended in 2019.  *See* ch. 19-81 § 2, Laws of Fla.  However, there is nothing in the language of section 893.21(2) or in the legislative history of the 2019 amendment to indicate that the legislature intended otherwise.

Moreover, when we read section 893.21 in pari materia with other sections of the "Florida Comprehensive Drug Abuse Prevention and Control Act," §§ 893.01-.30 and related statutory provisions, we conclude that the legislature intended to employ proximate causation as the test for legal liability. *See Heart of Adoptions, Inc. v. J.A.*, 963 So. 2d 189, 199 (Fla. 2007) ("[R]elated statutory provisions must be read together to achieve a consistent whole, and . . . '[w]here possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.' " (alterations and omission in original) (quoting *Woodham v. Blue Cross & Blue Shield, Inc.*, 829 So. 2d 891, 898 (Fla. 2002))).

For instance, section 782.04(1)(a)3, Florida Statutes (2020), classifies as a capital felony the distribution of multiple controlled substances enumerated under section 893.03 "when such substance or mixture is proven to be the proximate cause of the death of the user." Faced with section 893.21(2)'s ambiguity, and to maintain consistency with these related statutory provisions, we read section 893.21 to also require proximate causation.

Construing these related statutory provisions differently hazards anomalous and inconsistent results.

**B.   Proximate cause versus but-for cause**

Because we conclude that proximate cause is the appropriate test, we apply that test to the relevant, undisputed facts.

After EMS personnel found no health emergency with Mr. Waiters, the law enforcement officers arrested him on the outstanding warrant.  Only after they had arrested him did they find the contraband.  In our view, the outstanding warrant was an intervening, superseding cause severing any causal connection to Mr. Waiters' seeking medical assistance.  *See Frierson*, 926 So. 2d at 1143-44.

Section 893.21 requires that the request for medical assistance be *the cause* of the discovery of the evidence ("as a result").  *Cf. Reaves v. State*, 979 So. 2d 1066, 1069 (Fla. 1st DCA 2008) ("Proximate causation, or a causal connection between the defendant's reckless driving and the victim's death, is an essential element of vehicular homicide.").  The statute is necessarily discussing proximate causation, rather than the weak "but for" type of causation, which is inherently speculative and inconsistent with

14

the legislature's intent to limit immunity to contraband discovered as a direct and proximate result of an individual's seeking medical assistance for a drug overdose. *Cf. Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1156-57 (Fla. 1985) ("We reject the view that the legislature intended strict liability for dog owners in every instance where the actions of a dog are a factor in an injury. Clearly the rules of ordinary causation should apply. Thus, an affirmative or aggressive act by the dog is required. This 'affirmative act' requirement is a reasonable safeguard insofar as it forbids the imposition of liability in cases in which the animal is merely a passive instrumentality in a chain of events leading to injury. Even a strict liability statute should not reach that far. This interpretation is consistent with the general notion of proximate causation, since other factors would constitute superceding [sic] or overwhelming causes when the dog is merely passive or retreating.").

If we adopted a "but for" test for section 893.21, an individual would be immune from prosecution for any evidence discovered 'but for,' or as an indirect result of, a person's request for medical assistance. This would be true no matter how indirectly or

15

unexpectedly the evidence is discovered, or regardless of how long after the request the contraband is obtained, because there would be a never-ending "but for" chain of causation.

Although Mr. Waiters' request for medical assistance may be the "but for" cause of the contraband's discovery, that request was not a direct, or proximate, cause of that discovery. *Cf. Eversley v. State*, 748 So. 2d 963, 966-67 (Fla. 1999) ("Causation consists of two distinct subelements. . . . [B]efore a defendant can be convicted of a crime that includes an element of causation, the State must prove beyond a reasonable doubt that the defendant's conduct was (1) the 'cause in fact' and (2) the 'legal cause' (often called 'proximate cause') of the relevant harm."); *Tyus v. State*, 845 So. 2d 318, 321 (Fla. 1st DCA 2003) ("The two questions that must be considered in establishing legal causation are: (1) whether the prohibited result of the defendant's conduct is beyond the scope of any fair assessment of the danger created by the defendant's conduct and (2) whether it would be otherwise unjust, based on fairness and policy considerations, to hold the defendant criminally responsible for the prohibited result." (citing *Eversley*, 748 So. 2d at 966)).

16

In matters of restitution, itself a criminal sanction, "the Court has required both a 'but for' causation requirement and a 'significant relationship' requirement." *Schuette v. State*, 822 So. 2d 1275, 1282 (Fla. 2002); *State v. Castro*, 965 So. 2d 216, 218 (Fla. 3d DCA 2007) ("Restitution, unlike civil damages, is a criminal sanction." (citing *Kirby v. State*, 863 So. 2d 238, 242 (Fla. 2003))). This "test for causation resembles the test for proximate cause in a civil tort case." *State v. Harris*, 327 P.3d 1276, 1280 (Wash. Ct. App. 2014) (citing *Schuette*, 822 So. 2d at 1282). Florida courts "ha[ve] equated the 'significant relationship' test with the requirement of proximate causation between the criminal act and the resulting damages because the Court has required both a 'but for' causation requirement and a 'significant relationship.' " *Schuette*, 822 So. 2d at 1282. In applying this causation test, the Florida Supreme Court has concluded that an "existing circumstance" that does not cause the damages or loss is insufficient to support a restitution award:

> [I]n this case there has been an insufficient relationship between the act of driving with a suspended license and damages or loss resulting from the accident to allow for restitution. What is missing in this case is a causal relationship between the act of driving without a license and the accident that resulted in damages. The

17

suspension of the license was an existing circumstance, rather than a cause of the accident. Although it is undisputed that Schuette was driving illegally by driving with a suspended license, the State failed to present any evidence of a relationship-much less prove by a preponderance of the evidence-to establish that the accident and resulting damages were caused by, or related to, Schuette's act of driving without a license.

*Id.* at 1283. Similarly, here, there was an outstanding warrant for Mr. Waiters' arrest. And it was this existing circumstance that led to the discovery of the contraband, not the effort to seek medical assistance.

Moreover, we surmise that section 893.21 does not bar prosecution for contraband that is discovered due to independent, superseding causes. The warrant was such an independent cause. We find further support for our conclusion in the context of searches and seizures. *See* Amend. IV, U.S. Const.; art. I, § 12, Fla. Const. Courts do not use "but for" causation in this legal arena. *See Frierson*, 926 So. 2d at 1143 ("*Wong Sun*[ *v. U.S.*, 371 U.S. 471 (1963)] is, of course, the seminal case from the Supreme Court in respect to the issue of whether statements and other evidence obtained after an illegal arrest or search should be excluded. The Court in *Wong Sun* ruled that a defendant's statement and contraband taken from another defendant were the fruits of a law

18

enforcement officer's illegal action and should have been excluded. The Court, however, declined to adopt a 'but for' or 'per se' rule . . . ."). Generally, "[t]he fruit of the poisonous tree doctrine[,] a court-made exclusionary rule . . . 'forbids the use of evidence in court if it is the product or fruit of a search or seizure or interrogation carried out in violation of constitutional rights.' " *Hatcher v. State,* 834 So. 2d 314, 317 n.4 (Fla. 5th DCA 2003) (first quoting *Craig v. State,* 510 So. 2d 857, 862 (Fla. 1987); and then citing *United States v. Cruz,* 581 F.2d 535, 537 (5th Cir. 1978) (en banc), *overruled on other grounds by United States v. Causey*, 834 F.2d 1179, 1184-85 (5th Cir. 1987)).

However, as with many things in the law, there are exceptions. *See generally Moody v. State*, 842 So. 2d 754, 759 (Fla. 2003) ("Although the stop was illegal, the fruit of the poisonous tree doctrine does not automatically render any and all evidence inadmissible. A court may admit such evidence if the State can show that (1) an independent source existed for the discovery of the evidence[;] or (2) the evidence would have inevitably been discovered in the course of a legitimate investigation[;] or (3) sufficient attenuation existed between the challenged evidence and the illegal

19

conduct." (citations omitted)). Clearly, as part of the Fourth Amendment's causation analysis, courts must evaluate whether there are intervening circumstances, or if sufficient attenuation exists, between the illegal police conduct and the illegally obtained evidence sufficient "to purge the primary taint of the [police misconduct]." *Wong Sun*, 371 U.S. at 486.

Here, attenuation is key. *Frierson* is instructive. 926 So. 2d at 1144. There, the court held that a police officer's discovery of an outstanding arrest warrant was an intervening circumstance which dissipated the taint of an illegal traffic stop, such that the firearm seized during the search incident to arrest was not subject to suppression. *Id.* Crucial to the court's holding was the intervening circumstance of the discovery of the outstanding warrant; "the search was incident to the outstanding warrant and not incident to the illegal stop. The outstanding arrest warrant was a judicial order directing the arrest of respondent whenever the respondent was located." *Id.* The court observed that "[t]he illegality of the stop does not affect the continuing required enforcement of the court's order that respondent be arrested." *Id.* Thus, as the foregoing makes clear, if an initial illegal search is sufficiently "attenuated" by

20

an independent causal factor—such as a break in the chain of illegality, or by the inevitable discovery doctrine—a subsequent search may be upheld.[6] The same rationale holds here. Although Mr. Waiters would be immune from prosecution for any contraband uncovered as part of his seeking medical assistance, once the medical assistance ceased and law enforcement officers discovered (and were required to execute) the active arrest warrant, section 893.21 did not immunize Mr. Waiters from prosecution.

In *W.S.B.*, 180 A.3d at 1179, a case of first impression in New Jersey, the court noted that under a similar New Jersey law, each of the immunity provisions explicitly limits the statute's protection to criminal charges that are based on evidence "obtained as a result of the seeking of medical assistance." (quoting N.J. Stat. Ann. § 2C:35-30 (West 2013)). Therefore, the *W.S.B.* court reasoned, "incriminating evidence that law enforcement officials obtain *by other means*, such as the fruits of a search warrant or a constitutional warrantless search, *unconnected from someone's attempt to seek medical assistance* for an individual perceived to be

_____

[6] We do not mean to suggest that there was any illegality or impropriety on the part of law enforcement officers, here.

21

experiencing a drug overdose, is beyond the immunity's reach." *Id.* (emphasis added); *see generally Robinson*, 414 U.S. at 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.").

Any concerns as to Mr. Waiters' medical well-being were resolved after he had been evaluated and released. Then, law enforcement officers arrested him on the outstanding warrant. *Cf. State v. Silliman*, 168 So. 3d 245, 247 (Fla. 5th DCA 2015) (holding that section 893.21 was inapplicable because the defendant "was not experiencing a drug overdose and did not need medical assistance. Instead, the deputy believed that Silliman was impaired and took him into custody under the Marchman Act.").

We cannot conclude that the legislature intended a strict "but for" causation test in the statute. Certainly, if this was the legislature's intent, it could have easily said so. *See State v. Hubbard*, 751 So. 2d 552, 562 (Fla. 1999). Instead, the statute's test of causation, according to the legislative history, as well as under both common sense and generally accepted concepts of causation, must be proximate cause. The statute, here, requires

22

that the evidence be discovered "as a result" of the request for medical assistance, which simply means the request for assistance must be the direct and proximate cause of the discovery of the contraband.

## V. Conclusion

The trial court erred in utilizing "but for" causation to immunize Mr. Waiters from prosecution under section 893.21. Because law enforcement officers' discovery of the contraband was a proximate result of the search incident to Mr. Waiters' arrest on the outstanding warrant, we reverse the trial court's order.

Reversed.

CASANUEVA and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

23